UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | Chapter 7 |
| | : | |
| B&M HOSPITALITY LLC, | : | |
| | : | Bankruptcy No. 17-15092-AMC |
| DEBTOR | : | |
| | : | |

Ashely M. Chan, United States Bankruptcy Judge

## OPINION

### I. INTRODUCTION

In the instant matter, the Chapter 7 Trustee ("Trustee") and M&T Bank ("M&T") seek to have this Court determine the validity of M&T's lien on the liquor license ("Liquor License") owned by B&M Hospitality ("Debtor"). Because Pennsylvania law permits the creation of security interests in liquor licenses and M&T created and properly perfected its security interest in the Liquor License, M&T has a valid, perfected lien on the Liquor License.

### II. FACTUAL BACKGROUND

The Trustee and M&T stipulated to the following facts. Prior to the Debtor's bankruptcy filing, M&T made a commercial loan ("Loan") to the Debtor in the principal amount of $85,000. Joint Stip. at ¶ 2. On September 10, 2014, M&T and the Debtor executed a term note and a security agreement ("Security Agreement") to secure repayment of the Loan. *Id.* at ¶¶ 2, 3, Ex. A, Ex. B. Pursuant to the Security Agreement, the Debtor specifically granted M&T a security interest in "Collateral" which was defined as "general intangibles limited to that certain restaurant liquor license number R-1140 issued by the Pennsylvania Liquor Control Board" and "all proceeds of collateral of every kind and nature in whatever form, including, without limitation, both cash and noncash proceeds resulting or arising from the sale or other disposition

1

by the Borrower of the collateral." *Id.* at ¶ 3 and Ex. B. at ¶ 1.2(c)(I)-(II). As a result, the Loan was secured by the Liquor License pursuant to the terms of the Security Agreement. *Id.* at ¶ 3.

On September 25, 2014, M&T filed a UCC-1 Financing Statement, File No. 2014093002347 ("UCC-1"), in the Office of the Secretary of the Commonwealth. *Id.* at ¶ 4. The UCC-1 describes M&T's collateral as "all assets of the debtor, whether now existing or hereafter acquired or arising, wherever located" but does not specifically mention the Liquor License. *Id.*, Ex. C.

On July 28, 2017, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code and the Trustee subsequently was appointed to administer the Debtor's bankruptcy estate. *Id.* at ¶ 1. On October 19, 2017, the Trustee filed a Motion of Trustee to Sell Debtor's Asset Pursuant to 11 U.S.C. § 363(f) Free and Clear of all Liens, Claims and Encumbrances ("Sale Motion") seeking authority to sell the Liquor License free and clear of all interests. *Id.* at ¶¶ 6, 7. The Trustee contended in the Sale Motion that there were no liens on the Liquor License. *Id.* at ¶ 7.

On November 1, 2017, M&T filed its Response in Opposition to the Sale Motion, contending that it had a valid, perfected security interest in the Liquor License by virtue of the Security Agreement and the UCC-1. *Id.* at ¶ 8. On November 10, 2017, M&T filed Proof of Claim No. 3-1 evidencing its secured claim against the Debtor on account of the Loan in the amount of $55,166.54, consisting of principal in the amount of $54,996.05 and accrued and unpaid interest in the amount of $170.49. *Id.* at ¶ 5.

The Trustee and M&T subsequently agreed to the terms of an order ("Sale Order") which provided that: (1) the Liquor License would be sold free and clear of all interests for $175,000 with any such interests to attach to the proceeds of the sale; and (2) the Trustee would escrow proceeds from the sale in an amount sufficient to protect M&T's security interest in the Liquor

License pending the Court's determination of the validity of M&T's lien on the Liquor License. *Id.* at ¶ 9. The Sale Order was entered by the Court on November 27, 2017. *Id.*

### III. DISCUSSION

The Trustee and M&T primarily dispute whether a security interest can be created in a liquor license under Pennsylvania law. Trustee's Brief at 1; M&T's Brief at 3. The Trustee argues that, because the Pennsylvania Supreme Court held in 1984 that third parties cannot hold security interests in liquor licenses, M&T's purported security interest in the Liquor License cannot be valid. Trustee's Brief at 6. According to the Trustee, the Pennsylvania Supreme Court relied on a Pennsylvania Liquor Code ("Liquor Code") provision, 47 P.S. § 4-468(b.1), providing that liquor licenses constitute a privilege and not property. *Id.* at 2.

The Trustee argues that, despite the enactment of a 1987 amendment to the Liquor Code, 47 P.S. § 4-468(d) ("the 1987 amendment") which defined a liquor license as property between third parties and the licensee, third parties cannot create security interests in liquor licenses because: (1) the 1987 amendment directly conflicts with 47 P.S. § 4-468(b.1), which the Pennsylvania Legislature did not repeal; (2) certain cases decided after 1987 still cite to the Pennsylvania Supreme Court's holding as good law; and (3) the Pennsylvania Supreme Court's holding has not been overturned. *Id.* at 2-6.

In response, M&T relies upon numerous cases issued after 1987 which confirm that it is well established under Pennsylvania law that a third party can hold a security interest in a liquor license based upon the 1987 amendment. M&T's Brief at 3-4.

In the alternative, the Trustee argues that M&T failed to properly perfect its security interest in the Liquor License because the UCC-1 failed to specifically identify the Liquor License as collateral. Trustee's Brief at 6. M&T maintains that the UCC-1 sufficiently describes

3

the subject collateral because it indicates that the UCC-1 covers all assets of the Debtor as the Pennsylvania Uniform Commercial Code ("UCC") permits. M&T's Brief at 5.

The Court ultimately concludes that, in light of the 1987 amendment characterizing a liquor license as property between a licensee and third parties, it is clear that a security interest can be created in a liquor license and that the 1987 amendment does not contradict 47 P.S. § 4-468(b.1). The Court is not persuaded by the cases the Trustee cites in support of his position because they were either issued prior to the 1987 amendment or fail to consider the 1987 amendment. The Court also holds that, because the Security Agreement specifically identified the Liquor License as collateral and the UCC-1 described the collateral as "all assets of the debtor," which complies with Pennsylvania UCC § 9-504, M&T has a valid, perfected security interest in the Liquor License.

### A. Ability to Create Security Interests in Liquor Licenses Under Pennsylvania Law

#### 1. Security Interests in Liquor Licenses Under Pennsylvania Law

State law determines property interests in bankruptcy and whether security interests exist in a debtor's assets. *In re Submicron Systems*, 432 F.3d 448, 458 (3d Cir. 2006); *In re Kanoff*, 408 B.R. 53, 56 (Bankr. M.D. Pa. 2009). The UCC, as adopted in Pennsylvania, defines a security interest as an interest in personal property which secures payment or performance of an obligation. 13 Pa. C.S.A. § 1201(b)(35); *In re Ciprian Ltd.*, 473 B.R. 669, 673 (Bankr. W.D. Pa. 2012). Prior to 1987, the sole provision of the Liquor Code addressing whether a liquor license is considered property, 47 P.S. § 4-468(b.1) ("section 4-468(b.1)"), provided that, when a license is placed for safekeeping with the Pennsylvania Liquor Control Board ("the Board"), "the license shall continue as a personal privilege granted by the board and nothing herein shall constitute the

license as property." 47 P.S. § 4-468(b.1)[1]; *see 1412 Spruce Inc. v. Pennsylvania Liquor Control Board*, 504 Pa. 394, 397 (1984).

In 1984, relying on 47 P.S. § 4-468(b.1), the Pennsylvania Supreme Court held that, because a liquor license constitutes a personal privilege rather than property, it cannot be subject to attachment. *1412 Spruce Inc.*, 504 Pa. at 397, 400. Subsequently, the Third Circuit Court of Appeals, citing to *1412 Spruce Inc.* and the then-existing statutory scheme, held that, although a liquor license is not property subject to attachment under Pennsylvania law, it is property that may be subject to a federal tax lien. *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 359 (3d Cir. 1986).

On July 1, 1987, however, the Pennsylvania Legislature amended 47 P.S. § 4-468 to add a new section specifying that "[t]he license shall constitute a privilege between the board and the licensee. As between the licensee and third parties, the license shall constitute property." 47 P.S. § 4-468(d). Section 4-468(b.1) has not been repealed.

### 2. The Plain Language of the 1987 Amendment Makes Liquor Licenses Property Between Third Parties and Licensees And Does Not Conflict with 47 P.S. § 4-468(b.1).

Statutory construction begins with the plain language of the statute. *Artis v. District of Columbia*, 138 S. Ct. 594, 603 (2018); *Dubose v. Quinn*, 173 A.3d 634, 643 (Pa. 2017). If statutory language is unambiguous and the statutory scheme is coherent and consistent, inquiry into the meaning of the language at issue must cease without considering other canons of

---

[1] 47 P.S. § 4-468(b.1) specifically states that "In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, make an assignment for the benefit of creditors, become bankrupt by either voluntary or involuntary action, the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee, receiver, or assignee. The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license had been issued, including the right to transfer the license subject to the approval of the board. The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property."

5

statutory construction. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002); *In re Trust Under Deed of David P. Kulig Dated Jan. 12, 2001*, 175 A.3d 222, 229 (Pa. 2017).

The plainness or ambiguity of statutory language is determined by reference to "the language itself, the specific context in which that language is issued, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). Words should not be considered in isolation, but rather read in reference to the context in which they appear. *In re Trust*, 175 A.3d at 232. A statute is typically ambiguous when there are at least two reasonable interpretations of the text. *Id.* However, that opposing parties offer different interpretations alone does not necessarily make the language ambiguous if one interpretation is more persuasive. *In re MRL Development I, LLC v. Whitecap Inv. Corp.*, 823 F.3d 195, 204-05 (3d Cir. 2016). In contemplating statutory meaning, the Supreme Court urges "courts not to be guided by a single sentence or member of a sentence, but to look to…the whole law…" *In re Trump Entertainment Resorts*, 810 F.3d 161, 167 (3d Cir. 2016). Effect must be given to all provisions so that no part will be rendered "inoperative or superfluous, void or insignificant…" *In re Trust*, 175 A.3d at 229; *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 31 (3d Cir. 1995).

The plain language of the 1987 amendment characterizes a liquor license as property between a licensee and a third party and as a privilege between a licensee and the Board. 47 P.S. § 4-468(d). Although no legislative history conclusively establishes the intentions of the Pennsylvania Legislature in enacting the 1987 amendment, it is not necessary to consider legislative history when the language of the text is so clear. *See Barnhart*, 534 U.S. at 450; *In re Trust*, 175 A.3d at 229. Therefore, based solely upon the text of the 1987 amendment, the Court concludes that, as between a licensee and a third party, a liquor license constitutes property under Pennsylvania law.

With regard to the Trustee's argument that the 1987 amendment conflicts with 47 P.S. §4-468(b.1), the Court recognizes that it should attempt to "reconcile two seemingly conflicting statutory provisions whenever possible, instead of allowing one provision to effectively nullify the other." *U.S. v. Gordon*, 961 F.2d 426, 431 (3d Cir. 1992); *see Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission*, 556 Pa. 621, 641 (1999). While the Trustee relies on a single sentence in 47 P.S. § 4-468(b.1)[2] to argue that it conflicts with the 1987 amendment, considering 47 P.S. § 4-468(b.1) in the appropriate context reveals that it does not conflict with the 1987 amendment at all. Section 4-468(b.1) clarifies that, when a licensee becomes insolvent or bankrupt, the trustee, receiver, or assignee obtains the status of a licensee rather than a third party. ("The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations to the license as the person to whom the license had been issued…"). When the trustee, receiver, or assignee essentially becomes the licensee during safekeeping, it makes sense that nothing would construe the license as property between the Board and the trustee, receiver, or assignee. The 1987 amendment, on the other hand, simply defines a liquor license as property between a third party and a licensee and confirms that it remains a privilege between a licensee and the Board. Therefore, 47 P.S. § 4-468(b.1) applies in a specific context and does not contradict the 1987 amendment.

The majority of cases considering the creation of security interests in liquor licenses after the enactment of the 1987 amendment found that, by characterizing liquor licenses as property between licensees and third parties, the 1987 amendment made it possible to create security interests in liquor licenses. *In re Tam of Allegheny*, 575 B.R. 131, 134 (Bankr. W.D. Pa. 2017)

---

[2] Arguing that the phrase "nothing herein shall constitute the license as property" in 47 P.S. § 4-468(b.1) conflicts with the 1987 amendment characterizing the license as property between third parties and the licensee. Trustee's Brief at 2.

7

(describing a liquor license as personal property to which a security interest can attach); *In re Ciprian Ltd.*, 473 B.R. at 673 (finding that although Pennsylvania law previously characterized a liquor license as a privilege, the 1987 amendment made it property between third parties and the licensee, allowing for the creation of a security interest in the license); *In re Kanoff*, 408 B.R. at 58-59 (characterizing liquor license as a "general intangible," as opposed to a "good," to which a security interest may attach if requirements under Pennsylvania law are met); *In re G.R.F.*, 119 B.R. 68, 70 (Bankr. W.D. Pa. 1990) (finding security interest in liquor license became valid after passage of 1987 amendment); *In re Walkers Mill Inn, Inc.*, 117 B.R. 197, 200 (W.D. Pa. 1990) (acknowledging that retroactive application of the 1987 amendment would create a property right – a security interest – where none had existed under the previous law); *In re Clark*, 96 B.R. 605, 608 (Bankr. W.D. Pa. 1989) (acknowledging that the 1987 amendment changed Pennsylvania law such that a security interest can be created in a liquor license).

The few post-1987 cases cited by the Trustee which still rely on *1412 Spruce Inc.* either fail to consider the 1987 amendment at all in their analyses[3] or do not involve questions regarding the creation of security interests.[4] Accordingly, these cases do not control this Court's determination of the issue before the Court because they do not consider the impact of the 1987 amendment, which clearly describes a liquor license as property between third parties and licensees. Although the Trustee argues that *1412 Spruce Inc.* has not been overturned and should

---

[3] In one such post-1987 case, the creditor sought proceeds from the sale of the debtor's liquor license by virtue of a purported security interest in that liquor license. *In re Ultimate Restaurant Group, Inc.*, 144 B.R. 291, 293 (Bankr. W.D. Pa. 1992). The court stated, without mentioning the 1987 amendment, that security interests could not be created in a liquor license, relying only on pre-1987 cases, including *1412 Spruce Inc. Id.* at 294. It ultimately held, however, that a security interest can exist in proceeds from the sale of a liquor license, but that the creditor created no such security interest because the creditor never filed a UCC-1 financing statement. *Id.*

[4] The Third Circuit in *In re Nejberger* considered only whether a liquor license constitutes property of the bankruptcy estate, not the validity of security interests in liquor licenses, and briefly stated in dicta, without mentioning the 1987 amendment, that *1412 Spruce Inc.* determined that a liquor license was not property. *In re Nejberger*, 934 F.2d 1300, 1302 (3d Cir. 1991). This case ultimately held that a liquor license is property of the estate. *Id.*

apply in this case, this Court is not bound by such holding because the applicable statute relied upon in that case has been superseded by the 1987 amendment and the security interest at issue in this case was created after the 1987 amendment.

The Pennsylvania Legislature, by enacting the 1987 amendment, redefined the nature of a liquor license under state law. *In re Jackson*, 93 B.R. 421, 424 (W.D. Pa. 1988); *See 21 West Lancaster Corp.*, 790 F.2d at 359. Every post-1987 case that specifically considered the impact of the 1987 amendment on the creation of security interests has held that security interests can be created in liquor licenses because of the 1987 amendment. Therefore, the Court concludes that, in light of the 1987 amendment, security interests may be created in liquor licenses under Pennsylvania law. The Court will now address whether M&T created and properly perfected a security interest in the Liquor License.

### B. M&T's Creation and Perfection of a Security Interest in the Liquor License

#### 1. Creating Security Interests in Collateral

Under Pennsylvania law, a security interest attaches to collateral when it becomes enforceable against a debtor with respect to the collateral. 13 Pa. C.S.A. § 9-203(a). A security interest is enforceable against a debtor and third parties with respect to collateral only if: (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party, and (3) the debtor has authenticated a security agreement which provides a description of the collateral.[5] 13 Pa. C.S.A. § 9-203(b). A description of real or

---

[5] 13 Pa. C.S.A. § 9-203(b)(3) requires that at least one of four possible conditions be met: (i) The debtor has authenticated a security agreement which provides a description of the collateral, (ii) the collateral is not a certificated security and is in the possession of the secured party under section 9-313 pursuant to the debtor's security agreement, (iii) the collateral is a certificated security in registered form, and the security certificate has been delivered to the secured party under section 8-301 pursuant to the debtor's security agreement, or (iv) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights or electronic documents, and the secured party has control under section 7-106, 9-104, 9-105, 9-106, or 9-107 pursuant to the debtor's security agreement. Subparts (ii)-(iv) are not applicable to the instant case.

personal property is considered sufficient, whether or not it is specific, if "it reasonably identifies what is described." 13 Pa. C.S.A. § 9-108(a). Examples of reasonable identification include identification by specific listing, category, quantity, or any other method which makes the identity of the collateral objectively determinable. 13 Pa. C.S.A. § 9-108(b)(1)-(6). Supergeneric phrases such as "all assets" or "all personal property" are not sufficient to describe collateral in a security agreement. 13 Pa. C.S.A. § 9-108(c), comment 2.

The Trustee and M&T do not dispute that value was given and that the Debtor has rights in the Liquor License. M&T's Brief at 4 (only addressing sufficiency of the collateral description in the Security Agreement); Trustee's Brief at 6 (not mentioning any issues with value exchange or the Debtor's rights in the Liquor License). They also do not dispute the sufficiency of the collateral description in the Security Agreement because it describes the Liquor License by specific listing, as well as by collateral category. *See* Security Agreement, Ex. B ¶ 1.2(c)(i); M&T's Brief at 4-5; Trustee's Brief at 6 ("The Security Agreement describes the collateral as general intangibles limited to Liquor License R-1140…more importantly, M&T failed to include that language in its UCC-1 Financing Statement."). Therefore, M&T's security interest did attach to the Liquor License because the Security Agreement met all three requirements to make it enforceable against the Debtor and third parties.

### 2.    Perfecting Security Interests in Collateral

Related to attachment is the "perfection" of a security interest. *Interbusiness Bank, N.A. v. First National Bank of Mifflintown*, 318 F. Supp. 2d 230, 237 (M.D. Pa. 2004). Perfection of a security interest entitles a creditor to take priority in the collection and liquidation of collateral pledged by a debtor to such creditor as against other creditors who are either unsecured or who perfect their security interests in such collateral at a later point in time. *Id.* Under 13 Pa. C.S.A.

§9-317(a)(2)(i), "an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor before the security interest is perfected." *In re Tam of Allegheny LLC*, 575 B.R. at 135. Section 544(a)(1) of the Bankruptcy Code perfects a trustee's rights in all property not perfected by other creditors as of the filing date by giving the trustee the status of a hypothetical judicial lien creditor enjoying priority over unperfected security interests.[6] 11 U.S.C. § 544(a)(1); *In re Tam of Allegheny LLC*, 575 B.R. at 134; *In re Boyertown Auto Bodyworks*, 1991 WL 255135, at *3 (E.D. Pa. Nov. 27, 1991); *In re Davadick*, 82 B.R. 391, 394 (Bankr. W.D. Pa. 1988). As a result of the status given to a trustee, creditors with unperfected security interests are treated as general unsecured creditors. *In re Tam of Allegheny LLC*, 575 B.R. at 134; *In re Davadick*, 82 B.R. at 394.

In order to perfect a security interest, a secured party must file a financing statement[7] with the Office of the Secretary of the Commonwealth.[8] 13 Pa. C.S.A. § 9-310(a); 13 Pa. C.S.A. § 9-501(a)(2); *In re Tam of Allegheny*, 575 B.R. at 134. A financing statement is only considered sufficient if it (1) provides the name of the debtor; (2) provides the name of the secured party or representative of the secured party; and (3) indicates the collateral covered by the financing statement. 13 Pa. C.S.A. § 9-502(a)(1)-(3). A financing statement sufficiently indicates collateral it covers if the statement provides "(1) a description of the collateral pursuant to section 9-108 (relating to sufficiency of description); or (2) an indication that the financing statement covers all

---

[6] 13 Pa. C.S.A. § 9-102(a) of the Pennsylvania UCC also includes a trustee in bankruptcy under the definition of a "lien creditor."

[7] Exceptions to this requirement include security interests perfected under (i) 9-308(d) (relating to supporting obligation); (ii) 9308(e) (relating to lien securing right to payment); (iii) 9-308(f) (relating to security entitlement carried in securities account); or (iv) 9-308(g) (relating to commodity contract carried in commodity account). 13 Pa. C.S.A. § 9-310(b). None of these exceptions applies in the instant case.

[8] However, financing statements must be filed in the office designated for the filing or recording of a record of a mortgage on the related real property if (i) the collateral is as-extracted collateral or timber to be cut or (ii) the financing statement is filed as a fixture filing and the collateral is goods which are or are to become fixtures. 13 Pa. C.S.A. § 9-501(a)(1)(i)-(ii). Neither situation applies in the instant case.

assets or all personal property." 13 Pa. C.S.A. § 9-504(1)-(2) ("section 9-504"). Therefore, although phrases like "all assets" or "all personal property" are not sufficient to describe collateral in a *security agreement*, they are sufficient to indicate collateral in a *financing statement*. 13 Pa. C.S.A. § 9-101 comment 4(h); 13 Pa. C.S.A. § 9-108 comment 2. The UCC recognizes that "if the property in question belongs to the debtor and is personal property, any searcher will know that the property is covered by the financing statement…" 13 Pa. C.S.A. § 9-504 comment 2.

Here, the parties only dispute the sufficiency of the description of the collateral in the UCC-1. They do not dispute that M&T properly filed the UCC-1 in the Office of the Secretary of the Commonwealth and appropriately identified all parties. Joint Stip. at ¶ 4; M&T's Brief at 5 (focusing exclusively on sufficiency of collateral description); Trustee's Brief at 6 (never takes issue with identification of the parties nor with the filing office).

M&T's UCC-1 indicates that "the financing statement covers the following collateral: All assets of the debtor, whether now existing or hereafter acquired or arising, wherever located." Joint Stip. Ex. C. Section 9-504(2) specifically provides that supergeneric phrases like "all assets" sufficiently describe collateral in a financing statement. M&T's UCC-1 clearly identifies the collateral as "all assets of the debtor." Joint Stip. Ex. C. According to 13 Pa. C.S.A. § 9-504(2), this language gives M&T a perfected security interest in the Liquor License.

The Trustee also argues that the Pennsylvania Supreme Court's holding in *Heights v. Citizens National Bank*, regarding the sufficiency of the description of collateral in financing statements, should control the disposition of this case. Trustee's Brief at 6. In *Heights v. Citizens National Bank*, the Pennsylvania Supreme Court, citing to former Pennsylvania UCC § 9-110 and § 9-402(1), stated that "the description of collateral in a financing statement need not be

specific or exact as long as it reasonably identifies the type of property in which a security interest has attached" and that a description is sufficient "if it provides enough information to put a person on notice of the existence of a security interest in a particular type of property..." *Heights v. Citizens Nat. Bank,* 463 Pa. 48, 58-59 (1975).

However, effective July 1, 2001, Article 9 of the Pennsylvania UCC underwent major revisions, including revised section 9-504(2) which clearly allows supergeneric terms to sufficiently describe collateral in financing statements.[9] 13 Pa. C.S.A. § 9-101 comment 1, comment 4(h); 13 Pa. C.S.A. § 9-504(2); *Interbusiness Bank,* 318 F. Supp. 2d at 238. Since the revised Article 9 superseded the former Article 9 under which *Heights* was decided and M&T's UCC-1 was filed after Article 9 was revised, it is clear that *Heights* does not control the disposition of this case and M&T properly perfected its lien in the Liquor License by using a supergeneric description to describe its collateral. 13 Pa. C.S.A. § 9-101 comment 1; 13 Pa. C.S.A. § 9-504(2).

### IV.    CONCLUSION

Ultimately, Pennsylvania law clearly allows third parties to create security interests in Liquor Licenses. M&T followed all the requirements to create and perfect a lien on the Liquor License and is entitled to proceeds from its sale in the amount of its secured claim. An appropriate order follows.

Date: April 3, 2018

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[9] Prior to the revisions, former Pennsylvania UCC § 9-402(1) governed indication of collateral in financing statements and required a financing statement to reasonably identify the type of property to which a security interest had attached and provide notice of a security interest in a particular type of property. 13 Pa. C.S.A. § 9-504 comment 1; *Heights,* 463 Pa. at 58-59.

13